May it please the Court, Michael Rubin for Plaintiff Roosevelt Kairy and the rest of the Supershuttle drivers who have brought this case. The District Court in this case found that it had no subject matter jurisdiction over any of the California employment law claims that are brought by airport shuttle van drivers. It based that jurisdictional holding upon its construction of one section of General Order 158A issued by the Public Utilities Commission, which by its express terms allows shuttle companies to use employees or independent contractors to drive their vans. If the District Court were correct in its jurisdictional analysis, then no plaintiff, no driver regulated by this General Order or any similar General Order, no class of drivers and no California State agency on behalf of those drivers could bring any claim in any court, State or Federal, that rests upon the employee status of those drivers. Could they bring a complaint before the PUC? No. They cannot bring a complaint before the PUC because the PUC has explicitly disclaimed interest and regulatory authority over claims like that, most specifically in Anton v. Pacific Bell and as well. And it's an analysis on page 16 of the primetime decision. What the PUC has said – Would you say page 16 of the primetime? Go ahead.  Yes. At page 16 – and I'm referring to the asterisk page 16 of primetime in the Westlaw version. What the PUC said was we don't regulate drivers' incomes or PSC, Passenger Service Corporation's, preference for employee or nonemployee drivers or the way they recruit new drivers. Primetime may have committed improprieties under laws we don't administer, that is, employment laws. But if that's the case, relief lies elsewhere. The same point was made by the PUC in Alton v. Pacific Bell, a PUC decision in 1996. And again, in the amicus brief that the PUC filed in this case in support of reversal of the trial court's jurisdictional decision, it made clear repeatedly that it has not exercised authority over the employment classification of shuttle van drivers. Well, let me put my question differently. If the district court is correct that the PUC did exercise authority, then the drivers could bring a complaint before the PUC, right? That is potentially correct, depending on the nature of the PUC's authority. What the district court failed to do was identify the precise nature of the authority upon which it based its jurisdiction stripping analysis. Now, we know that any statute that purports to limit or strip the courts of jurisdiction has to be construed narrowly. What the district court said was because there's a provision in Section 5.03 that refers to the classification of drivers, therefore, this is a matter that the PUC has arrogated to itself the sole authority to administer. But if you look at the precise language of 5.03, what the PUC has done is disclaim jurisdiction. And as specifically said, we don't care. The terms used by the PUC were administrative agnosticism. It's all the same to us whether someone is treated as an employee or an independent contractor. That is a matter for the courts and the state labor agencies. That is not a matter for the PUC to determine. This case cannot be brought before the PUC. It could not be brought at the time before the PUC. The PUC has no institutional knowledge or ability to determine whether someone is an employee or is an independent contractor. That is a determination that has to be made under the multi-factor test that the California courts have adopted and that this Court has applied in cases like the Narayan case. There. Now, this issue and this general order, it never really has been interpreted by a California court, right? Never before. That is. It's like a. That's correct. It's a question without precedent, right? There's certainly no controlling precedent, right? Except, you know, there's some indication in the primetime case from the PUC, but no court has ever. I would grant you, Judge Tshishima, that there is no question construing the specific language of 5.03. However, if we step back to the next level, we have several cases from the California courts, Hartwell, Orloff, Cellular Plus, and Cundiff, all of which we cite in our brief, which talk about the fact that unless there is a direct interference with a decision of the PUC that specifically regulates a particular item that interferes with that and doesn't complement it, because in several of these cases there was an overlap of issues, California case law is very clear that there may be an overlap of issues between the court's jurisdiction and the PUC's jurisdiction. This is a question I'm getting at. You think there's any sense in certifying this to the California Supreme Court, or is it such a simple and clear question that we can decide it ourselves? I hate to say that any question that makes it up in the court of appeal is simple and quick, but we've given thought to that, and this is not an issue that needs to be certified. If you look at all the indicia of what the PUC intended and what it accomplished, including the PUC's own statements, including the consistent administrative history, in fact, it is a straightforward issue that this Court can decide as a matter of law. So you're saying there's plenty of indicia and they all point the same way? They all point in the exact same direction. And there are the indicia are, well, the controversy arises because at the same time the PUC says you can treat someone as an employee or you could treat someone as an independent contractor, it's all the same to us. They also say in the very same section that the driver has to be under the complete supervision, direction and control of the passenger stage corporation. That is the focus of the district court's analysis. And the question is, and this is a legal question, it's a matter of construing the language 5.03, what was meant by complete supervision, direction and control? PUC has told us, and it makes sense, that all they care about is ensuring that there's sufficient control, that the company is responsible to ensure that its drivers comply with its obligations to satisfy customer safety and service. There are at least four reasons why that language has to be construed, as PUC has said. And you're right, Judge Tsushima, they all point in exactly the same direction. One is, even aside from the fact that you construe jurisdiction stripping statutes narrowly, one is that the PUC's authority is specifically limited to questions of customer safety and service when you're focusing on shuttle van drivers. There would be no reason for it to reach out and decide an issue about control that went beyond its jurisdictional powers and authority into the labor agency arena where DLSC and the courts operate. Secondly, you've got to read 5.03 as a whole. This is a principle that applies to every contract, every statute, every regulation, every general order. The fact that in the very same sentence of Section 5.03, the PUC said not only must there be supervision and control, but employee status or independent contractor status is all the same with us, suggests very strongly that the PUC did not intend to mandate one status rather than another through its use of that term supervision or control. Otherwise, it would not have said explicitly and reiterated in primetime you could be either. Third, in the primetime decision itself, over and over again, it said that status does not matter for us. We will enforce the rule of the Los Angeles Airport in that case. But including the passages that I read earlier from page 16, the PUC said that as we as a carrier satisfies its basic obligations to provide customer safety and service, our requirement of control extends no further than that. And if you look at the primetime decision starting at page 16 and going to about page 20 where the PUC addresses specific findings that were made, specific testimony about how that particular shuttle van operator operated, you'll see many instances in which there was evidence that the PUC specifically found credible. Actually, it starts at page 14 in Section 3.41 of the opinion. Credible testimony showing that the shuttle van service there had no effective disciplinary program for drivers, couldn't pinpoint the van location, didn't require drivers to accept low fare rides, didn't require a specific maintenance program, yet that was found to be lawful and not a violation of the control requirements. What does that mean? That means that the PUC itself has shown that it doesn't mean that this control requirement requires absolute control over every element of what the driver does, which is what, in fact, SuperShuttle has done, but PUC construes that term as perfectly consistent with the option that it has tried to preserve between choosing to have someone be an employee or an independent contractor. And, of course, the fourth factor that supports this construction of 5.03 is the statements of the PUC itself, which the California courts repeatedly say should be deferred to in the Ostroff case and the PUC for its views. They defer to the PUC when it states its views. It has stated its views here. This is a case where SuperShuttle had employees up until 2001 or 2002 subject to a collective bargaining agreement. They ended the relationship with the union and they unilaterally imposed independent contractor terms, depriving all of the drivers as a result of their rights under California employment law, which they had had historically up until that point. They did it to improve efficiency, to improve profitability for reasons that may make perfect sense from a corporate perspective, but that are not required by the PUC and that result in these workers being forced to work very long hours, being forced to incur substantial costs, and being deprived of basic rights to wages and overtime that under California law all employees are entitled to. Now, SuperShuttle is not required by the provisions of 5.03 to dictate, as it has done to these workers, the specific details of the operation, how they dress, what they wear, whether they can have advertising, whether they can have their own business cards, whether they can offer promotional discounts, whether they can have pictures of their grandchildren in their van, whether they have to paint vans a particular way, whether they have to pick up or refare, whether they're going to be fined for refusing to pick up fares, whether they have to accept business on a weekly basis, whether they have to work certain shifts. All of these requirements that are imposed by SuperShuttle, which are indicia of an employee relationship under the multifactor analysis required under California law, are factors that SuperShuttle chose for its own interest in imposing, and as long as those aren't required. Do you want to save any time for rebuttal? Yes, I'd like to save the remaining time, Your Honor. Thank you. Thank you. Good morning. My name is Steve Rice. I represent the SuperShuttle entities, the appellees in this matter. And with all due respect to my colleague on the other side and his wild statements of all the terrible harms that will befall the drivers as a result of not being classified as employees, it's really the appellants who are or the appellees who are facing a grave situation here. It really doesn't matter who's, you know. The question before us is who gets to decide the legality of it, you know, not the economics of it. And there was one issue we didn't get to in Mr. Rubin's argument, and please tell me if I'm correct. As I understand it, the California Supreme Court has adopted the Koval test. Absolutely, yes. And that says that an action can go forward if it doesn't interfere with the PUC's exercise of authority. And the PUC here has told us it doesn't exercise authority. I mean, whether or not it could, the PUC doesn't exercise authority over the issue before us. Well, the PUC has actually exercised that authority in regard to Regulation 5.03 and in the primetime decision. I think what the Court must be referring to is the brief that the PUC filed, which is, you know, misdirected. It frankly reads like a politically driven effort to divert the attention of the Court from the real issues. The issues that the PUC brief addresses are issues that weren't even before the district court, which is does the law that the PUC has imposed require non-employee status. Nobody is contending that non-employee status is mandated by the PUC. The district court didn't make that finding, and the super shuttle entities have never argued that. Employee status has always been a permissible option. But what the PUC does absolutely require in its regulations is that regardless of the three categories that they've specifically called out in 5.03 that you can have, your subcarriers fall within. And regardless of which one is selected, the control that is exercised by the supervising carrier must be complete. It must be complete in control, must be completely directed, and must be completely supervised. If you take that literally, that's inconsistent with independent contractorship, isn't it? Well, no, because the PUC has specifically regulated the industries that we're talking about here. And remember, both sides are public utilities here. The appellants are charter party operators separately licensed by the PUCs, and they have their own regulations and rules that they have to follow with the PUC. The PUC also regulates the appellees, the passenger stage corporation operations. And what the PUC says is, look, we don't want to get involved in making those kind of business decisions because it could have all sorts of impacts on service, price, safety, things that we can't even imagine. So what we're doing is we're saying, look, you can have these three choices, but whichever one of those three choices you pick, you must maintain complete control, direction, and supervision over the subcarrier. So what they're doing is they're carving out in this very narrow, heavily regulated area of passenger transportation. It's hard to imagine many areas of public service that are regulated more than carrying passengers. But in this narrow little area, we've carved out a situation where you can be an independent contractor if you meet certain criteria. You have to be separately licensed and you have to be operating as a subcarrier. But if you're in – if you meet those criteria, you can be an independent contractor.  Kennedy. I'm not sure if I'm understanding this question. I'm understanding this case less and less as I hear the argument now, because one, if these drivers are themselves, as you say, you know, licensed, right, licensed subcarriers, licensed by the PUC, which means then their license conditions, they have to meet certain criteria required for the license, right? Yes. And then wouldn't that be inconsistent with a, you know, a court making a separate determination of whether they're employees or independent contractors, which is what the plaintiffs want? Right. It would be inconsistent. That's why the – Well, then how can the PUC disclaim any interest? I think the explanation lies in the fact that they didn't understand the true issues before this Court. If you look at the PUC brief, it's clear that they believed that the case turned on whether they were requiring non-employee status. But nobody's claiming that here. What we're claiming is, no, you allow non-employee status, but you require this level of control. And you maintain in your regulation that that is absolutely consistent in this heavily regulated context. Now, you know, you can't get around that regulation. What the plaintiffs are actually suing the super shuttle entities for is complying with the law. Where you see the third prong of the cobalt analysis fall in favor of the plaintiffs is in situations where the courts have determined that the relief being sought by the plaintiffs is complementary to the jurisdiction of the PUC or has nothing whatsoever to do with it. But in this case, all of the allegations that the plaintiffs are making are based on this allegation of quote-unquote excessive control. Well, how can that be consistent with the PUC's requirement that independent contractor status exists in an environment of complete control? It's directly contrary to the regulatory scheme that's been established by the PUC and reaffirmed in the primetime decision. Now, they've seized upon this one paragraph in this massive primetime decision and tried to construe it as basically the PUC abdicating jurisdiction over some parts of these issues. Is that the paragraph on page 18 or 16 or something like that? Yeah. That's the way it's been cited. Actually, in the record, it's cited at – it's found at page 222. 222 of the report? Now volume? Yes. All right. Go ahead. Okay. In that paragraph, what the PUC is looking at, and it's really dicta, is the hypothetical situation that somewhere down the road some agency or potentially a court, if it had jurisdiction over such matters, would make a ruling that would cause the PUC to reconsider either primetime's license or the regulations that the primetime decision was concerned about, basically 5.03. The PUC does not address this. I mean, in Pacific Bill, it says that the commission doesn't – can't formulate labor policies or fix wages or arbitrate labor disputes. Right. Well, so, you know, what is it? I mean, what Judge Tashima has before is where do you go with complaints about labor disputes, labor policies, terminations? Where can you go? Well, keep in mind that 5.03 specifically allows for employee drivers. So if you're an employee driver and you have a labor claim, you take it to court. That would not conflict with the Public Utility Commission's scheme. But the – this situation involves independent contractors. Independent contractors don't have labor claims. Of course, you say you're an employee and the company says you're an independent contractor. Where do you go? Well, it would depend. If what you're claiming is you're an independent – you're independent – I'm claiming you're an employee. Right. If you're claiming you're an independent –  An employee because your independent contractor status has been changed because of the control of this commission. Now, forget it. Whatever it is, you say I'm an employee. You go to work and you say I'm an employee. You know, look at all the things they make me do under California law. They have this – all of these controls. They give me all of the hours. You know, tell me everything I have to do. And I think under California law I'm an employee. So where do you go with that? Well, in – outside of this regulatory context, you would take it to court. No, inside this regulatory context. Inside. Where do you go when you say I'm an employee under California law? What you would do is you'd go to the PUC and say that we think the regulation is unfair. We think that the regulation needs to be changed. They say we don't have anything to do with this. We don't deal with employee status. No, but what they do deal with is the level of control that is consistent with independent contractor status. So if you're claiming that as an independent contractor you've now become an employee by virtue of the control that's exercised over you, and that's exactly what the California Supreme Court has done, it's laid out a very clear map. It's laid out the cobalt decision that if you follow it specifically and with an eye towards the actual intent of the test, there's no question that the California   law claims. Now, certainly the appellants have the right to bring their FLSA claims. They have brought those claims, even though the PUC apparently thinks that they're involved in this appeal as well. They're not. They're still able to claim any relief they want you there. And they can go to the PUC. The PUC has never disclaimed responsibility for 5.03. If 5.03 is the problem, in other words, if the level of control being exercised over these independent contractor subcarriers is the problem that they're complaining about, and it is, then that can be addressed by the PUC and would be. In fact, the PUC says that they want to consider that in the future. The 503c is unlawful? Would the PUC's interpretation of its own regulation is unlawful? Well, no, no, this is not an issue of whether the regulation is unlawful. I don't think anybody's even asserted that. The issue is simply whether that statute is implicated by the claims that the plaintiffs are making in this case. In other words, can you say that their claims are consistent with the world the PUC has created, which is you have an independent contractor who is separately licensed like they are and who is operating as a subcarrier like they are, and you exert complete control over him, can he still be an independent contractor? The PUC says yes. The plaintiff's case depends on the answer being no. Therefore, this is clearly an area that under the COVALT test, the California law does not give to the courts. Yes, but as this case stands now, given the district court's decision, the plaintiffs have nowhere to go to get this question decided, right? There's no forum available. No, absolutely. No, the PUC would definitely consider any rule changes relating to their rules. But they just said in their amicus brief we have no interest in this subject. We're agnostic. Yeah. What they're saying is they're not interested in which of the three categories you select, but that's not the issue. The issue here is whether the PUC, by its regulations, is creating an environment that's unfair to the plaintiffs. In fact, what the plaintiffs are claiming is that 5.03 must be read to have only one option, employee status, when clearly it has three. That would be a rewriting of the PUC rules, and that's expressly prohibited by the COVALT analysis. Now, the ---- The PUC could write a regulation that said we do not want to determine any disputes over the status, whether you're an employee or whether you're an independent contractor. Any dispute beyond that, we are not going to exercise authority over. Could they say that? They could write that as a regulation. Right. And if they did, then where would the people go with those disputes? Well, if they were going to write that as a regulation, it would be after a long process involving input from a lot of people. There would undoubtedly be a remedy that was inserted as part of that. In the absence of that, I would say hypothetically it would probably be the court. But right now we've got a situation where they've unquestionably regulated in this area. But they think they don't. Well, no. They don't think they haven't regulated in the area. They just didn't understand the question right. The question is not is non-employee status mandated. Nobody's claiming that. No, no. I'm saying it's mandated. But that's what the PUC thought when they wrote their brief. If you look at the language where the PUC just talks about what they decided in the prime time decision, if you look at pages three and four, the little snippets they took out of there, there's no question that that is absolutely incompatible with what the plaintiffs are saying here today, because the PUC reaffirmed In fact, they rejected the findings or the position of their own enforcement division in the prime time decision by saying non-employee status is perfectly permitted in this environment of absolute control, as long as you have that control. And that's directly relating to the PUC's regulatory scheme. It relates to the service, safety, pricing issues, everything that they considered in this massive prime time decision. And that whole decision, respectfully, would be tossed out the window if the plaintiffs' claims were to prevail. What would be the value of the prime time decision if not for the fact that it found that non-employee status is perfectly permissible under PUC regulations, as long as it's under the complete control of the supervising carrier? That decision would have no meaning. And under the covault analysis, that is what deprives the court of jurisdiction. Thank you. Now that it's time, I'd like to ask him sort of a side question, which is not an issue here. This bothers me about this case. Maybe you know the answer, because apparently you're a utility lawyer. But, you know, the Passenger Stage Corporation statute says, right, you're subject to regulation as a PSC if you transport people either between regular termini or on an established route or something like that, right? Which is not true of these shuttle companies. They don't have regular termini. They wander around and pick people up. So it's more like a taxi. So where does the PUC get the jurisdiction to regulate shuttle services? Right. Well, Passenger Stage Corporations are expressly authorized as public utilities by the coast. I know that, but the definition of the PSC is transport people between regular termini, which is not true of shuttles. Right. So where do they get the jurisdiction? Do you know the answer? Well, I think that what the way it's been interpreted is that the regular termini are established by the call. In other words, they don't need to be on the road. What do you mean? That's true of a taxi. If they come to my house and pick me up, that becomes a termini under the statute? No, because the PUC has prohibited shuttles from acting as taxis. They can't pick up people on the street, for example. They have to have. They come to your house. They have to actually pick you up at a prearranged location or at a public termini. Which is not a fixed termini. It's your home. Right? Yeah. So I don't understand that. Is there any decision on this? There is a decision. I don't know what I can. Well, that could disclose to this whole case. We can throw those shuttles out of business. Well, I thought you'd give me a simple answer, but apparently there isn't one. Thank you. Okay. Thanks. Mr. Rubenstein. Can you give us a simple answer to this? Yes. Counsel says that you and the PUC are misstating the issue. You understand this argument. Can you answer that argument? Yes. We're not misstating the issue. Counsel acknowledges that if someone is an employee with a labor claim, they can take it to court. The question in this case is what happens with someone who is treated like an employee but is called an independent contractor. So the question is, according to counsel, does the PUC require absolute deference to a passenger stage corporation's decision to call someone an independent contractor at the same time it treats them as an employee? And what the PUC said is no. We are not invading the province of the courts or the labor agencies. If someone is treated like an employee, they should be classified as an employee. If someone is treated as an independent contractor, they should be classified as an independent contractor. There is room within 5.03 for these PSCs to treat someone as either. Just as Super Shuttle used to treat all of its drivers as employees. Unless they have a little trouble understanding how you can exercise complete control over the individual, which is what the PUC seems to require, and call him an independent contractor. Right. And the reason is that there are many. There are different types of controls, some that go to the authority of the PUC, such as factors that specifically deal with how the fare system works, how the shuttle vans have to operate. And then there are all these other factors like how someone dresses, whether they can have pictures of their grandkids in the vans, whether they can solicit their own customers, whether they can offer promotional discounts. The entrepreneurial aspects. Let me focus on that. An independent contractor has professional autonomy and entrepreneurial abilities to make a profit. Super Shuttle has stripped them of all of that by imposing these controls. It mandates that these drivers are effectively cogs within the Super Shuttle system. They are interchangeable, fungible. That is not required by the complete control language. And what we've relied upon is the language of PUC itself in primetime, in Anton, and in the amicus brief to say we didn't intend complete supervision and control to mean anything other than you need to be responsible for these drivers in ensuring customer safety and service. That is the language. Now, apparently these drivers, as Mr. Rice said, they're licensed subcarriers, licensed by the PUC. So presumably the license contains some conditions, right? It does. Just like the license of a plumber, an electrician, a real estate agent, many types of employees are licensed. The mere fact of licensing is a very small factor in the multifactor test as to whether someone is an independent contractor, an employee. Many types of traditionally accepted employees are heavily licensed, including drivers.  Well, there's a question about lawyers. How about lawyers? Sure. Of course. There are certainly employee lawyers. Employees. Absolutely. Absolutely. And we're strictly regulated. But that does not determine whether someone is an employee or an independent contractor. So that actually has little to do with the equation here. It's whether there is a requirement that you classify someone under California law the way you treat them. And the California courts have been uniform. And this Court, applying California law, has been uniform, that if you treat someone like an employee, which is not just a function of control. Control is one factor, the ability to fire at will, the ability to find, to discipline. There are many factors present here that go beyond the typical initiative of control that we will be able to develop in the trial court require that they be classified as they are treated, which is as employees. Do you think that under the super shuttle business there can be independent contractors? Sure. They could absolutely structure their operations in a manner that provides more entrepreneurial opportunities, more independence. Under the factors that have been identified in Borrello, Estrada, and other cases, they absolutely could change many of the provisions in the franchise contract and operating agreement in order to ensure true independent contractor status. No doubt. And that is what the PUC recognized. They haven't done it. They've decided that they want everyone to be the same. The nameless, faceless drivers where there's no difference for their efficiency and profitability reasons is good business, but they're treating them like employees, and as a result they have to confer the benefits that California law provides upon employees. Thank you, counsel. Thank you. Thank you both very much. Case to start, it will be submitted.
judges: Fletcher, Reinhardt, Tashima